**Marian Cecile Mohr FRY, Plaintiff,**

v.

**CITY OF HAYWARD, a municipal corporation, Defendant.**

**No. C–86–6607 EFL.**

United States District Court, N.D. California.

Aug. 24, 1988.

---

Anthony B. Varni, David P. Lanferman, Varni, Fraser, Hartwell & Rodgers, Hayward, Cal., for plaintiff.

Alice C. Graff, City Atty., Gary R. Rinehart, Elizabeth A. Principato–Phipps, Sp. Counsel, Oakland, Cal., Gerald D. Bowden, Atchison & Anderson, Santa Cruz, Cal., for defendant.

Matthew Righetti, Oakland, Cal., for intervenors George Price and Al Nakashima.

## MEMORANDUM DECISION

LYNCH, District Judge.

This case is before the Court on defendant City of Hayward's motion for summary judgment. The City seeks a ruling that a local land use measure pertaining to plaintiff Fry ("Measure 1") is not invalid as a violation of the equal protection clause. For the reasons explained below, this Court denies summary judgment in favor of the City and instead grants summary judgment in favor of Fry.

## BACKGROUND

Fry owns a 108–acre parcel of land in Hayward known as the Hayward Golf Course. Once agricultural land, the property is now largely surrounded by residential, commercial and industrial development. Until the early 1980s, the land was used as a golf course. Since then, it has gone largely unused.

In 1985, Fry applied for a General Plan amendment to change the property's designation from "open space" to "residential," or any other designation. While this appli-cation was pending, the voters of the City enacted Measure 1, a referendum "confirming and retaining" the open space designation for the Hayward Golf Course. More importantly, however, Measure 1 provides that, unlike other property owners in the City, Fry may not obtain a change in her property's zoning designation without prior voter approval. Measure 1 affects only Fry's property. In accordance with the new law, the City denied Fry's application for a General Plan amendment.

In response to this denial, Fry initiated the present lawsuit. The thrust of her complaint was that the open space designation constitutes a taking without just compensation in violation of the fifth and fourteenth amendments. She also challenged the designation and the denial of an amendment on due process and equal protection grounds. Additionally, Fry contended that Measure 1 violated the same constitutional provisions. Finally, she advanced pendent state trespass claims.

On October 29, 1987, this Court dismissed all of Fry's claims except the challenge to Measure 1 as a denial of equal protection and due process. To the extent Fry attacked the open space designation on the theory that it is unconstitutional as applied to her property, the claim was unripe for failure to submit a meaningful development application in conformance with the designation. See *Kinzli v. City of Santa Cruz*, 818 F.2d 1449 (9th Cir.), *amended*, 830 F.2d 968 (9th Cir.1987). Moreover, any facial challenge failed because the language of the zoning designation did not deprive Fry of all economically viable use of her land. Finally, the Court declined to exercise pendent jurisdiction over Fry's state law claims. (For a more thorough discussion of the Court's reasons for dismissing most of Fry's complaint, see this Court's decision in the analogous case of *Zilber v. Town of Moraga*, 692 F.Supp. 1195 (N.D.Cal.1988.)

After the dismissal of most of Fry's complaint, the City moved for summary judgment on the only remaining issue: whether Measure 1 abrogates Fry's equal protection

or due process rights. The Court will now turn to this question.

## DISCUSSION

### 1. *Ripeness*

In cases challenging the constitutionality of land use regulations, the Supreme Court and the Ninth Circuit have developed a ripeness doctrine requiring that a property owner, prior to initiating a federal claim, obtain a "final decision" by the authority charged with enforcing the statute. *See, e.g., MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986); *Lake Nacimiento Ranch Co. v. San Luis Obispo County,* 841 F.2d 872 (9th Cir.1988). Specifically, the doctrine requires that the property owner pursue at least one meaningful development application and one variance request prior to initiating suit. *See Lake Nacimiento,* 841 F.2d at 876. Although the principle was developed in the context of taking claims, the Ninth Circuit has determined that the development application requirement also applies to due process and equal protection claims. *See Herrington v. County of Sonoma,* 834 F.2d 1488 (9th Cir.1987).

■ Nevertheless, the final decision rule does not bar Fry's challenge to Measure 1 because that rule governs only "as-applied" attacks on land use regulation. *See Lake Nacimiento,* 841 F.2d at 876–78; *Martino v. Santa Clara Valley Water Dist.,* 703 F.2d 1141, 1146–47 (9th Cir.1983). Here, Fry's theory is that by singling out her property from all other similarly situated property in the City, Measure 1 violates equal protection *on its face.* Since a "final decision" on the application of a statute is not a prerequisite to a facial challenge, this ripeness requirement does not bar Fry's claim.

Relying on *Lake Nacimiento,* the City argues that another, slightly different, threshold requirement precludes the claim. In *Lake Nacimiento,* the court applied the rule developed by the Supreme Court in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) to bar a procedural due process claim until the plaintiff pursued available state remedies. 841 F.2d at 879. From this the City concludes that Fry may not assert her claim until she has lost a suit in state court. This Court cannot agree.

The rule applied in *Lake Nacimiento* governs procedural due process claims, not facial attacks on equal protection grounds. It is premised on the notion that, if a state provides an adequate postdeprivation remedy, no procedural due process violation has occurred. By contrast, Fry contends that *any* application of Measure 1 would violate her equal protection rights. Consequently, the *Parratt* rule is not an obstacle to this claim.

### 2. *The Merits*

■ Unless a statute distinguishes on the basis of a suspect or quasi-suspect classification, or burdens fundamental rights, it will be presumed valid and sustained against an equal protection challenge if "the classification drawn ... is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Clearly the statute here involves neither a suspect classification nor fundamental rights, and the City does not strongly contend otherwise. Consequently, the Court will apply the rational basis standard.[1]

The City advances essentially two arguments to demonstrate that Measure 1 meets the rational basis standard. First, the City insists that land use regulation by

---

**1.** Fry seeks to apply what is perhaps a slightly higher level of scrutiny drawn from California cases assessing the validity of land use ordinances. The California Supreme Court has stated that a zoning ordinance must "be substantially and reasonably related to the welfare of the region affected.... It cannot unfairly discriminate against a particular parcel of property."

*Building Industry Ass'n v. City of Camarillo,* 41 Cal.3d 810, 226 Cal.Rptr. 81, 718 P.2d 68 (1986). This may or may not be a more stringent test than the rational basis standard, but in any event this Court's disposition of the case on the basis of federal law makes it unnecessary to reach this issue.

direct legislation—whether initiative or referendum—is a constitutional means of accomplishing the City's legitimate land use goals.[2] This is certainly true, *see Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976), but it is also beside the point. The fact that Measure 1 was enacted by the voters rather than the City Council does not immunize it from constitutional limitations. "It is plain that the electorate as a whole, whether by referendum or otherwise, could not order city action violative of the Equal Protection Clause, and the City may not avoid the strictures of that Clause by deferring to the wishes or objections of some fraction of the body politic." *Cleburne*, 473 U.S. at 449, 105 S.Ct. at 3259 (citations omitted).

The City's second argument is somewhat closer to the mark, but again misses the heart of the matter. The argument begins with the unassailable premise that open space protection is a legitimate legislative objective. From there it leaps to the conclusion that Measure 1 is rationally related to that objective.

Of course, the glaring defect in this argument is that it utterly fails to address the key question: how is the *singling out of Fry's property* rationally related to the City's legitimate open space objectives? It is this classification that forms the basis for the equal protection claim, not the manner in which the legislation was enacted or the nature of the interest purportedly served.

The City concedes, and the record reflects, that Hayward contains many other parcels of open space property. But the City makes absolutely no attempt to provide a reason for distinguishing Fry's open space property from all of the other open space property in Hayward—not by geography, size, location or on any other basis. Imposing a special burden on just one portion of the open space in Hayward would not seem to promote the objective of preserving open space generally.

This Court is well aware that the burden to show constitutionality is not on the City, that Measure 1 is presumptively valid. However, while both parties submitted considerable documentation on this issue, the record is devoid of any indication that Fry's property bears any unique characteristics that would warrant separate treatment. Indeed, the record is to the contrary. As noted, there is considerable open space property throughout Hayward that was not made subject to Measure 1. Further, Fry obtained an environmental impact report indicating that development of the Golf Course would not have a detrimental effect on the region. Finally, the City's own Planning Director, in his deposition, was at a loss to explain why the Fry property had been singled out. *See* Declaration of Anthony P. Varni in Opposition to Defendant's Motion for Summary Judgment, Exh. G. (Deposition of B. Allred, Vol II at 15, 22–26).

■ In summary, Fry has provided a strong showing that her property is, for purposes of land use regulation, indistinguishable from other open space property in Hayward.[3] The City, on the other hand, has failed to offer even a theoretical reason for treating the Fry property separately. Consequently, this Court finds that the classification in Measure 1 is not rationally related to a legitimate interest, and Measure 1 is therefore unconstitutional, void and without effect.[4] Summary judgment

2. In its motion papers, the City advanced this argument mainly in opposition to Fry's due process claim. However, at oral argument, counsel for Fry relied almost exclusively on the fact that Measure 1 is voter-enacted legislation as the means to defeat the equal protection claim. Therefore the Court finds it appropriate to address this contention under the equal protection claim.

3. To the extent the record indicates any difference between Fry's property and other open space, it suggests a *lesser* need to limit her development rights, since she has introduced evidence that residential development of the Golf Course would not significantly interfere with the City's land use planning objectives.

4. The disposition of this case on the basis of equal protection obviously makes it unnecessary to reach the due process issue.

in favor of plaintiff Fry is hereby granted,[5] and the City is enjoined from enforcing Measure 1.

IT IS SO ORDERED.

---

5. While the case is before the Court on defendant City's motion, "[a] district court may grant summary judgment for the non-moving party if it is apparent from the record and at the hearing that there is no genuine issue of material fact essential to the movant's case." *Superior*

*Engineering and Electronics Company v. Sanders,* 833 F.2d 823, 825 (9th Cir.1987) (citing *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311 (9th Cir.1982). The Court finds this an appropriate case to grant summary judgment for the non-moving party.