**ALFA LEISURE, INC.**

v.

**KING OF THE ROAD**

**No. ED CV 01–796 RT(SGLX).**

United States District Court,
C.D. California.

April 7, 2004.

Craig S. Summers, Irfan A. Lateef, Lauren Jennifer Keller, Michael K. Friedland, Knobbe Martens Olson & Bear, Irvine, CA, for Plaintiff.

Dennis L. Thomte, Thomte Mazour & Niebergall, Omaha, NE, Aaron Thomas Borrowman, Scott W. Kelley, Kelly Bauersfeld Lowry Kelley, Woodland Hills, CA, for Defendant.

PROCEEDINGS ORDER (1) DENYING DEFENDANT/COUNTER–CLAIMANT'S MOTION FOR SUMMARY JUDGMENT AS TO ITS AFFIRMATIVE DEFENSE AND COUNTER–CLAIM BASED ON PLAINTIFF/COUNTER–DEFENDANT'S INEQUITABLE CONDUCT REGARDING U.S. PATENT NO. RE 37,351, AND (2) GRANTING PLAINTIFF/COUNTER–DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT/COUNTER–CLAIMANT'S AFFIRMATIVE DEFENSE AND COUNTER–CLAIM BASED ON INEQUITABLE CONDUCT

TIMLIN, District Judge.

The court, Judge Robert J. Timlin, has read and considered the motion for summary judgment by defendant/counterclaimant King of the Road ("KOR") on its affirmative defense/counter-claim for inequitable conduct regarding U.S. Patent No. RE 37,351 (" '351 patent") against plaintiff/counter-defendant Alfa Leisure, Inc. ("Alfa"), pursuant to Fed.R.Civ.P. Rule 56 ("Rule 56"). The court has also considered the opposition of Alfa and KOR's reply. Based on such consideration, the court concludes as follows.

## I.

### BACKGROUND

Alfa filed a complaint against KOR for patent infringement. KOR filed an answer to Alfa's complaint and counterclaims, and Alfa filed a reply to the counterclaims. The court granted KOR's motion for leave to amend its answer and counterclaims to include an affirmative defense and counterclaim based on inequitable conduct.

KOR filed the instant motion for summary judgment against Alfa, based on inequitable conduct regarding the '351 patent. At oral argument on the instant motion, Alfa requested that the court consider granting summary judgment on the same inequitable conduct issue in its favor.

After the hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) ("Markman hearing"), the court construed as a matter of law that the following terms were to be given their ordinary meanings "chassis", "chassis section", "first elevated section", and "first elevated chassis section."

## II.

### UNCONTROVERTED MATERIAL FACTS

Johnnie Crean is the named inventor of U.S. Patent No. 5,746,473 (" '473 patent"),

which issued with 37 claims. The '473 patent was assigned to Alfa. In 1999, Alfa filed reissue application Serial No. 09/385,-002 of the '473 patent which issued as the patent-in-suit, U.S. Patent No. RE37,351 ("the '351 patent"), on September 4, 2001, with additional reissue claims 38–73. The '351 patent relates to a fifth wheel trailer. Alfa and KOR are competitors. KOR is a division of Chief Industries, Inc.

The Abstract of the '351 patent states that the controls of the drain assembly are advantageously located within the trunk space (storage compartment) at an elevated position above the ground. Col. 1, lines 61–67, and Col. 2, lines 1–8, of the '351 patent point out the disadvantages of locating the drainage controls for the wastewater tanks beneath the trailer. Col. 3, lines 60–67, discusses that the control valves 228 are elevated above the main level 206 of the chassis 202 at a convenient level for the user to manipulate the controls within the trunk space 224.

Col. 7, lines 24–54, further describes the advantages of locating the sewage tank in the upper end of the trunk space and the advantage of locating the drainage control valves within the trunk space 224.

Claims 1, 3, and 4 of the '351 patent include the limitation that the plumbing drainage controls are located within the storage compartment. Claims 1 and 2 each include the limitation that one or more sewage holding tanks are mounted to the first elevated chassis section. Claims 5–16 of the '351 patent ultimately depend from claim 4 and therefore also include the limitation that the plumbing drainage controls are located within the storage compartment. Claim 17 describes the limitation that the dram assembly includes control valves that are mounted within the trunk space immediately beneath the first elevated section of the chassis.

Claims 18–29 ultimately depend from claim 17 and therefore also include the limitation that the control valves are mounted within the trunk space. Independent claim 30 likewise includes the limitation that the control valves are mounted within the trunk space. Since claims 31–37 ultimately depend from claim 30, they also include the limitation that the control valves are mounted within the trunk space. Independent claim 38 and dependent claims 39–52 include the limitation that one or more sewage tanks are mounted on the first elevated section of the chassis.

Dependent claim 52 also includes the limitation that the control valves for the sewage tanks are located within the trunk space. Independent claim 53 and dependent claims 54–57 include the limitation that one or more sewage tanks are mounted on the first elevated section. Dependent claim 67 also includes the limitation that the control valves are located within the trunk space.

Sixty-seven of the seventy-three claims of the '351 patent include the limitation that the sewage tanks are mounted on the first elevated chassis section (in the upper part of the storage compartment) or that the drainage control valves are located within the trunk space. Some of the 67 claims include both of these limitations.

## III.

### ANALYSIS

A. *Legal Standard for a Summary Judgment Motion*

Under Federal Rule of Civil Procedure 56 ("Rule 56"), a district court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court and the Ninth Circuit have established the following standards for consideration of such motions. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (*quoting* Fed.R.Civ.P. 56(e), *and citing Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100 (9th Cir.1986), *and Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). With respect to the specific facts offered by the nonmoving party, the court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.,* 809 F.2d at 630–31 (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Rule 56(c) requires entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2553. In order to defeat a motion for summary judgment, the plaintiff must present significant probative evidence tending to support the complaint. *See Rand v. Rowland,* 154 F.3d 952, 963 (9th Cir.1998), *T.W. Elec. Serv.,* 809 F.2d at 630. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient. "[T]here must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). This court thus applies to either party's motion for summary judgment the same standard as for a motion for directed verdict. "[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

■ Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment against a moving party if that party has had a "full and fair opportunity to ventilate the issues involved in the matter." *Gospel Missions of America v. City of Los Angeles,* 328 F.3d 548, 553 (9th Cir.2003), *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 312 (9th Cir.1982). The district court may *sua sponte* grant a summary judgment to the nonmoving party where it determines that "there is no genuine dispute respecting a material fact essential to the proof of movant's case" *O'Keefe v. Van Boening,* 82 F.3d 322, 324 (9th Cir.1996) (quoting *Cool Fuel v. Connett,* 685 F.2d 309, 311 (9th Cir.1982) (internal quotations omitted)). *See also Kassbaum v. Steppenwolf Productions, Inc.,* 236 F.3d 487, 494 (9th Cir. 2000) ("It is generally recognized that a court has the power *sua sponte* to grant summary judgment to a non-movant when there has been a motion but no cross-motion").

*B. Inequitable Conduct*

■ Inequitable conduct occurs when a person applying for a patent registration fails to disclose material information, or submits false material information to the United States Patent and Trademark Of-

fice ("PTO"), with an intent to deceive. *J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.,* 747 F.2d 1553, 1559 (Fed.Cir.1984), *cert. denied,* 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985). Patent applicants are required to prosecute applications with "candor, good faith, and honesty." *Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc.,* 326 F.3d 1226, 1233 (Fed.Cir. 2003), see also 37 C.F.R. § 1.175(a)(7) (1986) (duty of candor applies throughout the prosecution of the patent).

█ An otherwise valid patent may be rendered unenforceable by virtue of inequitable conduct committed during the prosecution of the patent application before the PTO. *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.,* 45 F.3d 1550, 1556 (Fed.Cir.1995). Inequitable conduct includes affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive. *See Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1068–71 (Fed.Cir.1998). Although inequitable conduct is a matter for the court, rather than the jury to resolve, summary judgment is inappropriate if there are genuine issues of material fact. *Ulead Systems, Inc. v. Lex Computer & Management Corp.,* 351 F.3d 1139 (Fed. Cir.2003), *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.,* 984 F.2d 1182, 1190 (Fed.Cir.1993).

█ Determination of inequitable conduct requires a two step analysis. First, the trial court must determine whether the withheld reference meets a threshold level of materiality. The trial court must then also determine whether the evidence shows a threshold level of intent to mislead the PTO. *See Baxter Intern., Inc. v. McGaw, Inc.,* 149 F.3d 1321, 1327 (Fed. Cir.1998), *Halliburton Co. v. Schlumberger Tech. Corp.,* 925 F.2d 1435, 1439 (Fed.Cir. 1991).

After threshold findings of materiality and intent have been established by clear and convincing evidence, the court must weigh them to determine if equity warrants a finding of inequitable conduct. *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed.Cir.1995). The more material the omission or representation, the less evidence of intent will be required in order to find that inequitable conduct has occurred. *See N.V. Akzo. v. E.I. Dupont de Nemours,* 810 F.2d 1148, 1153, (Fed.Cir. 1987). In light of all the circumstances, the court must then determine whether the applicant's conduct is so culpable that the patent should be held unenforceable. *See LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n,* 958 F.2d 1066, 1070 (Fed.Cir.1992).

Courts look with disfavor upon the charge of inequitable conduct of a patent "[t]he Federal Circuit has long decried the use of charging inequitable conduct in patent litigation." *TM Patents, L.P. v. Int'l Bus. Mach. Corp.,* 121 F.Supp.2d 349, 372 (S.D.N.Y.2000), *Burlington Indus., Inc. v. Dayco Corp.,* 849 F.2d 1418, 1422 (Fed.Cir. 1988) ("[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague."), *FMC Corp. v. Manitowoc Co.,* 835 F.2d 1411, 1415 (Fed.Cir.1987) ("Inequitable conduct is not, or should not be, a magic incantation to be asserted against every patentee."), *Chiron Corp. v. Abbott Labs.,* 156 F.R.D. 219, 221 (N.D.Cal.1994) (finding inequitable conduct is often used as a delay tactic, a tactic to obfuscate the issues before the court, or a settlement tactic).

## C. Analysis

█ In the instant motion, KOR contends that Johnnie Crean ("Crean"), Alfa's president and inventor of the '351 patent, withheld material information from the PTO. As noted above, summary judgment

on the issue of inequitable conduct is inappropriate if there are genuine issues of material fact. *Ulead Systems, Inc. v. Lex Computer & Management Corp.*, 351 F.3d 1139 (Fed.Cir.2003).

As to the first step of the analysis of an inequitable conduct claim, the trial court must determine whether the withheld information meets a threshold level of materiality. Under 37 C.F.R. § 1.56(b),

> information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
>
> (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim, or
>
> (2) It refutes, or is inconsistent with, a position the applicant takes in
>
> (i) Opposing an argument of unpatentability relied on by the Office, or
>
> (ii) Asserting an argument of patentability

A prima facie case of unpatentability is established "when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability." *Id.*

In the instant case, there are genuine issues of fact as to whether the alleged omissions by Alfa in its application for the '351 patent were material KOR presents evidence that the prior art-the Auto-Mate, the Fleetwod Bounder, and the Fleetwood Avion travel trailers—had features that were material to the '453 and '351 patents. Specifically, KOR uses its deposition of Crean, as evidence that the prior art structures had sewage tanks in the upper end of a storage compartment. (KOR motion, pg. 14–15). Alfa responds with evidence that KOR is mischaracterizing the prior art, and that the Auto-Mate, Bounder, and Avion travel trailers have features that differ substantially from the unique features patented by Crean. To support this point, Alfa presents exhibits depicting the prior art, as compared to the subject of the '351 patent (Ex. 1 to Friedland Dec.).

As noted above, a prima facie case is established only by information that *compels* a conclusion that a claim is unpatentable. In the instant case, where there remains a factual dispute about the features of the prior art, and their applicability to the patent at issue, the court is unable to conclude as a matter of law that the omitted information compels the conclusion that the claims of the '351 patent were unpatentable.

■ Even if the uncontroverted facts established a prima facie case of materiality, the court still needs to determine whether KOR has submitted any evidence showing a threshold level of intent to mislead the PTO. *See Baxter Intern., Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed. Cir.1998). Materiality of undisclosed information does not presume an intent to deceive. *Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1567 (Fed.Cir.1988). Intent to deceive can not be inferred solely from the fact that information was not disclosed, rather, there must be a factual basis for a finding of deceptive intent. *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1288–89 (Fed.Cir.2002), *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed.Cir.1996). Even a finding of gross negligence does not of itself justify an inference of intent to deceive. *Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1442–43. The Federal Circuit has clarified that negligent conduct

can support an inference of intent only when, "viewed in light of all the evidence, including evidence indicative of good faith," the conduct is culpable enough "to require a finding of intent to deceive." *Id.*

Direct evidence of intent to mislead is often absent. *Halliburton Co.,* 925 F.2d at 1442–43 (Fed.Cir.1991), *Rohm & Haas Co. v. Crystal Chem. Co.,* 722 F.2d 1556, 1571 (Fed.Cir.1983). KOR does not submit any direct evidence that Alfa intended to mislead the PTO by withholding references. KOR, however, contends that its evidence demonstrates that Crean knew that his father's inventions, the Bounder and Avion trailers, had features that were material to the '351 patent. KOR argues that this evidence of knowledge, combined with Crean's failure to disclose, supports an inference of intent to mislead. Alfa has submitted with its opposition evidence that Crean did not knowingly and intentionally omit references to those trailers in his PTO patent application. (Crean Decl., March 10, 2004).

As noted above, intent to mislead the PTO is an essential threshold element to the affirmative defense/counter-claim of inequitable conduct. KOR has presented no evidence as to intent to deceive by Crean. Rather, it argues that the court should infer intent from Crean's knowledge of the omitted information and from the totality of his conduct.

Although intent need not, and rarely can, be proven by direct evidence, it is most often proven by "a showing of acts the natural consequences of which are presumably intended by the actor." *Kansas Jack, Inc. v. Kuhn,* 719 F.2d 1144, 1151 (Fed.Cir.1983). While intent is often a function of materiality, *KangaROOS U.S.A., Inc. v. Caldor, Inc.,* 778 F.2d 1571, 1573 (Fed.Cir.1985), "materiality does not presume intent, which is a separate and essential component of inequitable conduct." *Braun v. Dynamics Corp. of America,* 975 F.2d 815, 822 (Fed.Cir.1992). In *Braun,* the defendant alleged that plaintiff failed to disclose its own material prior art *Id.* In that case, there was no issue as whether plaintiff knew of the prior art. Furthermore, there was no issue as to materiality. *Id.* Nonetheless, the court held that materiality and knowledge alone were insufficient to prove intent. *Id.*

Because KOR has not presented any significant probative evidence of intent to deceive, such as circumstantial evidence showing that Alfa engaged in a pattern of nondisclosure, the court cannot conclude as a matter of law that Alfa, by the alleged omissions of prior art by Crean and his knowledge of those omissions, engaged in inequitable conduct in its application to the PTO for the patent registration of the '473 and '351 patents. The court, therefore will deny KOR's motion for summary judgment on its affirmative defense and counterclaim based on inequitable conduct.

The court will now consider Alfa's request for summary judgment on the instant motion. Although Alfa has not submitted a separate motion for summary judgment on KOR's affirmative defense/counter-claim regarding inequitable conduct of the '351 patent, salient issues upon which the court would rely to assess summary judgment for Alfa were presented in KOR's motion and reply on this issue, as well as in Alfa's opposition. *See Gospel Missions of America v. City of Los Angeles,* 328 F.3d 548, 553 (9th Cir.2003).

For the reasons stated above in denying KOR's motion for summary judgment, the court will grant Alfa's motion for summary judgment on Defendant KOR's affirmative defense and counter-claim based on inequitable conduct regarding the '351 patent.

## IV.

### *DISPOSITION*

ACCORDINGLY, IT IS ORDERED THAT

1) Defendant/counter-claimant King of the Road's motion for summary judgment on its affirmative defense and counter-claim based on inequitable conduct regarding U.S. Patent No. RE 37,351 is DENIED, and

2) Plaintiff/counter-defendant Alfa Leisure's motion for summary judgment on Defendant/counter-claimant King of the Road's affirmative defense and counter-claim based on inequitable conduct regarding U.S. Patent No. RE 37,351 is GRANTED.